DECISION
{¶ 1} Relator, Donna J. Shisler, commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Public Employees Retirement System ("PERS"), to award her a survivor pension in accordance with the desire of her late husband, Robert N. McLaughlin ("decedent").
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued *Page 2 
a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court deny relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision. Therefore, this matter is now before this court for a full, independent review.
 {¶ 3} Relator sets forth the following objections to the magistrate's decision:
 OBJECTION NO. 1. Relator objects to the Magistrate's conclusion that this case does not present an issue of statutory interpretation.
 OBJECTION NO. 2. Relator objects to the Magistrate's deference to PERS's interpretation of R.C. § 145.56(E) because there is no lawful interpretation by PERS to which the Magistrate may defer.
 OBECTION NO. 3. The Magistrate failed to acknowledge that the statute at issue here is remedial, and failed to interpret it accordingly.
 OBJECTION NO. 4. The Magistrate's interpretation of the statute was incorrect and improper.
 OBJECTION NO. 5. The Magistrate improperly went beyond the text of the statute and its legislative purpose, and improperly went beyond the scope of the PERS decision at issue, in denying Relator the relief she requested.
 OBJECTION NO. 6. The Magistrate's conclusion that there was no evidence to support Relator's claim that PERS failed to provide decedent with estimates of the financial implications of the Plan options is wrong as a matter of law.
 OBJECTION NO. 7. The Magistrate's conclusion that the Pop Down Request form provided Mr. McLaughlin with sufficient information is wrong as a matter of fact.
 OBJECTION NO. 8. The Magistrate erred in concluding that Relator was not entitled to equitable relief.
 {¶ 4} Before addressing relator's objections to the magistrate's decision, we will provide a condensed recitation of the facts of this case. Decedent began receiving an *Page 3 
age and service retirement benefit from PERS in 1998. Defendant was married and elected to receive his retirement benefits under "Plan D," in the form of a joint survivorship annuity, which was payable to decedent for as long as he lived and, thereafter, the same amount to his spouse. Decedent divorced in 2003 and elected to change to "Plan B," a single life annuity, payable to decedent for his lifetime and which would terminate at his death.
 {¶ 5} Decedent married relator on March 10, 2006, and eventually sought to change his election back to Plan D. Early in 2007, decedent completed plan-change documents and submitted them with PERS. Instead of selecting just one specific plan, decedent selected all three. Consequently, PERS rejected the form. Subsequently, decedent properly completed a new form. This form was signed on February 25, 2007, and mailed to PERS on March 1, 2007. Decedent died on March 2, 2007. PERS received his properly completed election change form on March 5, 2007. PERS, citing R.C. 145.46(E), advised relator that decedent's application to change plans became "void" because the form was not received until after decedent's death.
 {¶ 6} As a result of the decision of PERS, relator filed the instant mandamus action, alleging that she is entitled to a survivor pension in accordance with the wishes of her late husband. In order to be entitled to a writ of mandamus, relator must establish: (1) that she has a clear legal right to the accumulated and continuing joint and survivor retirement benefits; (2) that PERS has a corresponding clear legal duty to provide these benefits; and (3) that she possesses no adequate remedy in the ordinary course of law. State ex rel. Shimola v. Cleveland
(1994), 70 Ohio St.3d 110, 112. In order to meet this standard, relator must demonstrate that PERS abused its discretion in denying her *Page 4 
request for survivor payments. See State ex rel. Schaengold v. Ohio Pub.Emp. Retirement Sys., 114 Ohio St.3d 147, 2007-Ohio-3760, at ¶ 8. An abuse of discretion exists when a decision is unreasonable, arbitrary, or unconscionable. Id. Upon applying this standard, the magistrate of this court resolved that relator is not entitled to the requested writ.
 {¶ 7} We now address relator's objections to the magistrate's decision. Because relator's first five objections involve interrelated issues, we will address them together. By her first objection to the magistrate's decision, relator argues that the magistrate erroneously concluded that this case does not present a question of statutory interpretation. Relator's second objection essentially alleges that the magistrate deferred to PERS's interpretation of R.C. 145.46(E), and that PERS has improperly developed a rule that prohibited a decision in relator's favor. By her third objection, relator argues that the magistrate failed to acknowledge the remedial nature of R.C. 145.46(E). By her fourth objection, relator argues that the magistrate incorrectly and improperly interpreted R.C. 145.46(E). Relator's fifth objection alleges that the magistrate improperly invoked policy arguments to support her construction of R.C. 145.46(E).
 {¶ 8} As reflected above, relator's first five objections center on PERS's application of R.C. 145.46(E) to the facts of this case. R.C. 145.46(E) provides, in pertinent part, as follows:
 (1) Following a marriage or remarriage, both of the following apply:
 (a) A retirant who is receiving the retirant's retirement allowance under "plan B" may elect a new plan of payment under division (B)(1), (3)(b), or (3)(c) of this section based on the actuarial equivalent of the retirant's single lifetime benefit as determined by the board. *Page 5 
 (2) If the marriage or remarriage occurs on or after the effective date of this amendment, the election must be made not later than one year after the date of the marriage or remarriage.
 The plan elected under this division shall become effective on the date of receipt by the board of an application on a form approved by the board, but any change in the amount of the retirement allowance shall commence on the first day of the month following the effective date of the plan.
 {¶ 9} The initial issue to resolve in regard to these first five objections is whether the statutory language at issue in this matter requires statutory construction by this court. "`The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it.' This court may engage in statutory interpretation when the statute under review is ambiguous." State v. Hairston, 101 Ohio St.3d 308,2004-Ohio-969, at ¶ 11, quoting Slingluff v. Weaver (1902),66 Ohio St. 621, paragraph one of the syllabus. Conversely, if a statute is not ambiguous, "then we need not interpret it; we must simply apply it."Hairston, at ¶ 13, citing Sears v. Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus ("An unambiguous statute is to be applied, not interpreted.").
 {¶ 10} The magistrate resolved that this is not a case of statutory interpretation. We agree. Relator has not directed this court to any ambiguity in the statutory language pertinent to the resolution of the central issue in this matter, i.e. whether decedent's attempt to change his election survived his death and should have been considered effective so as to entitle relator to a survivor pension. Nor do we, upon reviewing the pertinent statutory language, find any ambiguity which would require this court to engage *Page 6 
in statutory interpretation. Furthermore, contrary to relator's contention, the magistrate did not "defer" to PERS's interpretation of the pertinent statutory language.
 {¶ 11} Also unpersuasive is relator's argument that R.C. 145.46(E) should be liberally construed in favor of the interests of public employees that the pension statutes were designed to protect. Indeed, the Supreme Court of Ohio has stated that "[a]mbiguous statutory provisions must be construed liberally in favor of the interests of the public employees and their dependents that the pension statutes were designed to protect." State ex rel. Solomon v. Bd. of Trustees of thePolice and Firemen's Disability and Pension Fund (1995),72 Ohio St.3d 62, 65-66, citing State ex rel. Teamsters Local Union 377 v.Youngstown (1977), 50 Ohio St.2d 200, 205. However, the court also noted that "`[t]here is no need to liberally construe a statute whose meaning is unequivocal and definite.'" Id., quoting Lake Hosp. Sys., Inc. v.Ohio Ins. Guar Assn. (1994), 69 Ohio St.3d 521, 525. Because R.C. 145.46(E) is not ambiguous, it should not be construed liberally.
 {¶ 12} Relator argues that R.C. 145.46(E) does not provide that a request to change plans becomes void at the retirant's death. Defendant is correct that R.C. 145.46(E) does not contain language regarding the consequence of the death of a member. However, R.C. 145.46(E) expressly provides that the "plan elected under this division shall become effective on the date of receipt by the board of an application on a form approved by the board." Applying the above-quoted language to the case at bar, it is clear that, on the date decedent died, the joint and survivor annuity plan was not effective because the election form had not been received by the board. Because the change in plans, from a single life annuity to a joint and survivor annuity, was not effective *Page 7 
before decedent died, decedent's single life annuity was in effect when he died. In addition, because the single life annuity terminated upon decedent's death, his right to retirement benefits terminated. SeeSolomon, supra. Although the Solomon decision concerned the Police and Firemen's Disability and Pension Fund, and not PERS, we, like the magistrate, find the reasoning expressed therein to be instructive.
 {¶ 13} Additionally, we reject relator's contention that the magistrate improperly invoked policy considerations in order to reach a result contrary to that advocated by relator. In her decision, the magistrate observed that the Supreme Court of Ohio had noted that retirement program rules that provide for when a change is effective "`appear to prevent some death-bed reselections for retirees who marry after receiving the higher single life annuity benefits for years. The preservation of state money is a legitimate state purpose that can supply a rationale for creating a classification.'" Magistrate's decision, at ¶ 59, quoting Solomon. The magistrate noted that, in the present case, decedent was 60 years old while relator was 35 years old, but she did not expand upon this observation.
 {¶ 14} We do not view the magistrate's quoting of Solomon in reference to "deathbed reselections" as critical to her analysis. Essentially, the magistrate was implicitly making the observation that there is a rational basis for the General Assembly deciding not to have a retirement plan change considered effective when it is completed, but rather at a later date. Such a rationale could be based on the legitimate idea that it would prevent so-called "deathbed reselections." We view such an analysis in this particular case as simply an observation as to why the law may be as it is, not a basis to interpret the law in a particular way. *Page 8 
 {¶ 15} For these reasons, we overrule relator's first five objections to the magistrate's decision.
 {¶ 16} Relator's sixth, seventh, and eighth objections are interrelated and, therefore we will address them together. Relator's eighth objection generally challenges the magistrate's conclusion that relator is not entitled to equitable relief. According to relator, she is entitled to relief under three separate equitable theories. First, relator argues that decedent's request to change his election should be deemed to relate back to the date the original was filed. Second, relator argues that PERS is equitably estopped from asserting that decedent's request was not timely filed. Third, relator argues that relief should be granted because decedent substantially complied with the statutory requirements.
 {¶ 17} Relator cites Jeany v. Atlas Constr. Co. (Aug. 15, 1989), Franklin App. No. 88AP-1190, in support of the argument that decedent's request should be deemed to "relate back" to the date the original was filed. In Jeany, the central issue was whether a claimant seeking workers' compensation benefits had timely filed his claim for benefits due to an occupational disease. This court analyzed the pertinent statutes and noted that former R.C. 4123.512 stated that upon receipt from a claimant of information indicating that an injury or occupational disease had occurred or been contracted, which may be compensable under R.C. Chapter 4123, the administrator of the bureau of workers' compensation was required to notify the employee and the employer of such information. Former R.C. 4123.512 further provided that the receipt of such information and such notice by the administrator shall be considered an application for compensation. See Jeany. In addition, under R.C. 4123.85, a claim for benefits resulting from an *Page 9 
occupational disease is considered filed as to toll the statute of limitations when application is made to the Industrial Commission or the Bureau of Workers' Compensation.
 {¶ 18} In Jeany, the administrator did not notify the employer or the employee of the receipt of a letter from a doctor disclosing the diagnosis of an occupational disease. This court reasoned that, if the notice was required prior to recognizing that an application had been filed, the claimant would be penalized for the administrator's inaction and noncompliance with the duty imposed under former R.C. 4123.512. Such an interpretation would allow a delay in the sending of the notice until the statute of limitations for the claim had run, despite the requirement that a notice be sent. See Jeany. This court viewed this possible consequence of such an interpretation as absurd. See id. Consequently, this court held: "Although the notice from the commission is mandatory to complete the application process so a hearing can be held and a determination made, the time of such notice does not control the time of application but, instead, the notification whenever made relates back to the time of receipt of the requisite information making that the time of application." Id.
 {¶ 19} Relator's contention that Jeany supports her argument that she is entitled to equitable relief is unpersuasive. This court inJeany reached its conclusion that the application at issue was made when the requisite information was received by the Industrial Commission on the basis of an analysis of the pertinent workers' compensation statutes. Conversely, the case at bar concerns the proper application of certain PERS statutes. Furthermore, we do not find the reasoning expressed in Jeany to be instructive *Page 10 
here. Therefore, Jeany is not controlling in this case, and relator's argument that decedent's application should "relate back" is unpersuasive.
 {¶ 20} Relator's sixth and seventh objections challenge determinations made by the magistrate regarding relator's argument that the doctrine of equitable estoppel should be applied.
 {¶ 21} Relator's sixth objection contends that the magistrate erroneously concluded that there was no evidence to support her claim that PERS failed to provide decedent with estimates of the financial benefits under each of the different plans. This objection concerns the second point set forth by the magistrate for why relator's equitable estoppel argument is problematic. Insofar as the magistrate's decision is interpreted as finding that there was no evidence that relator was not given estimates on the phone during the January 19, 2007 phone call, we agree with relator that this finding seems to conflict with the PERS employee's notes concerning the February 21, 2007 phone call, which indicates that relator had not been given estimates. However, we read the magistrate's decision as observing that there was no evidence that information, in the form of relatively more inexact approximations, was not provided to relator concerning benefits under the plans. Nonetheless, in the final analysis, this point is not dispositive, as there are other reasons relator's equitable estoppel argument fails.
 {¶ 22} Relator's seventh objection alleges that the magistrate erroneously concluded that the request form provided relator with sufficient information to make his election. In support of this objection, relator argues that the magistrate essentially determined that Plan D was necessarily decedent's best option and that decedent was provided sufficient information to make this election. *Page 11 
 {¶ 23} Relator's arguments to the contrary, we resolve that the magistrate logically analyzed the facts of this case pertinent to the issue of equitable estoppel and correctly resolved that relator did not demonstrate a prima facie case in support of the application of equitable estoppel. We concur with the magistrate's analysis. For the reasons stated in the magistrate's decision, relator has not demonstrated a prima facie case of equitable estoppel.
 {¶ 24} To support her argument that decedent's request to change plans should be effective because he substantially complied with statutory requirements, relator cites State Mut. Life Assurance Co. of America v.Holmes (Aug. 30, 1988), Franklin App. No. 88AP-377. However, relator's reliance upon the Holmes case is misplaced, as that case concerned a dispute involving an attempted exchange of one insurance policy for another; whereas, the case at bar involves a PERS member's attempt to change plans under PERS.
 {¶ 25} Based on the foregoing, we overrule relator's sixth, seventh, and eighth objections to the magistrate's decision.
 {¶ 26} Upon independently reviewing this matter, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Thus, we overrule relator's objections, and adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
 Objections overruled; writ denied. FRENCH and TYACK, JJ., concur. *Page 12 
 APPENDIX A {¶ 27} Relator, Donna J. Shisler, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Public Employees Retirement System ("PERS"), to award her a survivor pension in accordance with the desire of her late husband, Robert N. McLaughlin ("decedent"). *Page 13 
Findings of Fact: {¶ 28} 1. Decedent applied for age and service retirement from PERS in 1998. At the time, he was married and elected to receive his benefits under Plan D, which pays a monthly benefit to the member for as long as he lives and, after he dies, pays the surviving spouse the same monthly benefit until she dies.
 {¶ 29} 2. The decedent was divorced in 2003. At that time, decedent changed his election and elected to have his retirement benefits recalculated to a single life annuity, designated as Plan B.
 {¶ 30} 3. Decedent married relator in March 2006. Shortly thereafter, decedent filed a change of beneficiary notice designating relator as his PERS beneficiary. However, at that time, decedent did not change his election and he continued to be paid under Plan B.
 {¶ 31} 4. On December 29, 2006, decedent requested the documents necessary to change his election because of his marriage to relator. The evidence indicates that the materials were sent to him that day and that, on January 19, 2007, decedent called again and the information he had received was explained to him.
 {¶ 32} 5. Decedent completed the documents; however, he elected all benefit payment options available (Plans A, C and D) rather than selecting only one plan as indicated on the application.
 {¶ 33} 6. On February 12, 2007, PERS returned the application to decedent advising him that his attempt to change his election was invalid because he had not elected one specific plan. *Page 14 
 {¶ 34} 7. Decedent telephoned PERS on February 21, 2007 indicating that he had not received an estimate of his monthly benefits. As such, the estimates were sent to him.
 {¶ 35} 8. Decedent completed and signed the new application on February 25, 2007 and mailed the application to PERS on March 1, 2007. Decedent elected to receive benefits under Plan D.
 {¶ 36} 9. Decedent died on March 2, 2007.
 {¶ 37} 10. PERS received the application decedent had sent them changing from Plan B to Plan D on March 5, 2007.
 {¶ 38} 11. After PERS received the application concerning decedent's death, relator was advised that decedent's election change was void because the application had not been received prior to decedent's death.
 {¶ 39} 12. Relator contacted PERS several times attempting to cause PERS to honor decedent's election; however, by letter dated July 5, 2007, PERS explained to relator the following:
 Your letter requested an appeal of our determination that Mrs. Shisler-McLaughlin is not entitled to monthly survivor payments and health care coverage.
 Our determination was based on section 145.46
(E), of the Ohio Revised Code, that states that a change in plan of payment shall become effective on the date of receipt by the board of an application on a form approved by the board.
 Since Mr. McLaughlin passed away on March 2, 2007, and the form to change his plan of payment was not received in our office until March 5, 2007, the application became void and no further monthly payments are due on his account.
 Our decision was based on the Ohio Revised Code, and therefore not eligible for an appeal. *Page 15 
Although we understand the hardship this has caused, it is our duty to only provide benefits outlined in the Ohio Revised Code.
 {¶ 40} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 41} In order to be entitled to a writ of mandamus, relator must establish: (1) that she has a clear legal right to the accumulated and continuing joint and survivor retirement benefits; (2) that PERS has a corresponding clear legal duty to provide her these benefits; and (3) that she possesses no adequate remedy in the ordinary course of law. SeeState ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. Further, Ohio courts have consistently held that a party challenging a decision of a public retirement system through an action in mandamus must demonstrate an abuse of discretion before relief may be granted. See, e.g.,State ex rel. McMaster v. School Emp. Retirement Sys. (1994),69 Ohio St.3d 130, 133. Relator asserts that when a retirant elects a joint and survivor annuity plan and the election is signed and mailed prior to his death, the election is not voided by the death of the retiree before the documents are received by PERS.
 {¶ 42} In this action, relator first contends that this court should not apply an abuse of discretion standard. Relator contends that the issue she has raised is one of statutory interpretation and that this court's review is de novo. Because the magistrate finds that this is not a case of statutory interpretation, the magistrate rejects relator's argument and finds that the abuse of discretion standard is the appropriate standard of review.
 {¶ 43} As stated in the findings of fact, the decedent began receiving an age and service retirement from PERS in 1998. At that time, he was married and elected to receive his retirement benefits under Plan D, a joint survivorship annuity, payable to *Page 16 
decedent for as long as he lived and, thereafter, the same amount to his spouse. Decedent divorced in 2003 and elected to change to Plan B, a single life annuity, payable to decedent for his lifetime and which would terminate at his death. Decedent remarried on March 10, 2006, and ultimately completed documents to change his election back to Plan D, which would pay him benefits for life and thereafter, pay benefits to his spouse, relator herein. Decedent died on March 2, 2007, and his election change was received by PERS on March 5, 2007. Because decedent's attempted plan change was not in effect on the date of his death, PERS considered his application void and this mandamus action followed.
 {¶ 44} R.C. 145.46(E) provides that a retirant may change their election following a marriage or remarriage. Specifically, R.C. 145.46
provides:
 (E)(1) Following a marriage or remarriage, both of the following apply:
 (a) A retirant who is receiving the retirant's retirement allowance under "plan B" may elect a new plan of payment under division (B)(1), (3)(b), or (3)(c) of this section based on the actuarial equivalent of the retirant's single lifetime benefit as determined by the board.
 (2) If the marriage or remarriage occurs on or after the effective date of this amendment, the election must be made not later than one year after the date of the marriage or remarriage.
 The plan elected under this division shall become effective on the date of receipt by the board of an application on a form approved by the board, but any change in the amount of the retirement allowance shall commence on the first day of the month following the effective date of the plan.
 {¶ 45} Relator argues that PERS's interpretation of R.C. 145.46(E) is an error because the statute does not expressly provide that the application is void if it is received *Page 17 
after the member's death. For the reasons that follow, the magistrate rejects relator's argument.
 {¶ 46} R.C. 145.451 explains what happens upon the death of a retirant or disability benefit recipient. Specifically, R.C. 145.451(A) provides:
 (A) Upon the death of a retirant[,] * * * who at the time of death is receiving an age and service retirement benefit * * * from this system, a death benefit shall be paid, following the completion of an application on a form approved by the public employees retirement board, to one of the following * * *:
 (1) The person the retirant * * * has designated in writing[.]
 (2) The retirant's * * * surviving spouse;
 (5) If the retirant * * * had twenty-five or more years' total service credit, two thousand five hundred dollars.
 {¶ 47} At the time of his death, decedent was receiving an age and service retirement benefit from PERS under Plan B, a single life annuity, paid for his lifetime and which would terminate at death. At the time of his death, decedent was no longer entitled to payments under Plan B. Pursuant to R.C. 145.451(A), decedent's spouse, relator herein, was entitled to a death benefit in the amount of $2,500. Instead of accepting the death benefit, relator contends that PERS must give effect to decedent's desire to change to Plan D and provide her with continuing survivorship payments.
 {¶ 48} A similar situation was addressed by the Supreme Court of Ohio in State ex rel. Solomon v. Police Firemen's Disability Pension FundBd. of Trustees (1995), 72 Ohio St.3d 62. The Solomon case involved the Police and Firemen's Disability and Pension Fund. In that case, the decedent was married on May 31, 1991. On June 7, *Page 18 
1991, the board of trustees ("board") received a completed application adding his wife as a dependent so that she could receive healthcare benefits. On July 31, 1991, the decedent completed and executed an application to cancel his single life annuity plan and reselect a joint and survivor annuity plan naming his wife as beneficiary. The application was received by the board on August 2, 1991. The decedent died of colon cancer on August 8, 1991. By letter dated October 2, 1991, the decedent's wife was advised that the decedent's application for the joint and survivor annuity plan was voided by his death prior to theeffective date of his reselection. The decedent's wife pursued a mandamus action to compel the board to honor the decedent's application and to pay her accumulated and continuing joint and survivor retirement benefits.
 {¶ 49} In the Solomon case, the applicable statutory provision provided:
R.C. 742.3711(C) provides:
 "Following marriage or remarriage, a member of the fund may elect a new optional plan of payment based on the actuarial equivalent of his single lifetime benefit as determined by the board. The plan shall become effective the first day of the month following an application of a form approved by the board." * * *
Id. at 64. (Emphasis sic.)
 {¶ 50} Citing Doe v. Blue Cross/Blue Shield of Ohio (1992),79 Ohio App.3d 369, the court explained that a court's paramount concern in construing a statute is the legislative intent. To determine the legislative intent, the court first looks to the language of the statute and the purpose to be accomplished. Further, R.C. 1.42 provides that words used in a statute must be taken in their usual, normal and customary meaning.
 {¶ 51} The Solomon court found that R.C. 742.3711(C) was unambiguous and clearly stated that the reselected plan does not become effective until the month following *Page 19 
its receipt. When the decedent died, his reselected plan was not yet in effect. Instead, at the time of his death, his single life annuity was still in effect and his right to receive retirement benefits in the fund terminated. Therefore, his wife was not entitled to receive continuing retirement benefits. Further, the court determined that the statutory provisions were not ambiguous and rejected the argument that they must be liberally construed in favor of the interest of public employees and their dependents to provide the benefit.
 {¶ 52} In the present case, decedent's attempt to change the plan under which he received his benefits, by statute, became effective on the date it was received by PERS. The application for the change was not received by PERS until after decedent died. At the time of decedent's death, he was receiving a single life annuity which, upon his death, terminated. As such, as in the Solomon case, the statute is clear: relator herein is only entitled to receive the death benefit because the decedent's change of election was not in effect.
 {¶ 53} Relator also contends that equity demands that this court issue a writ ordering PERS to honor decedent's attempt to change his election. Specifically, relator contends that it was through no fault of the decedent that PERS received his application after he died. Instead, relator points to the telephone logs and argues that, but for the fact that decedent had been misinformed by PERS staff, his application to change his plan would have been received by PERS before his death. As such, relator contends that his attempt to change his election should be given effect.
 {¶ 54} Relator essentially contends that PERS should be estopped from asserting that decedent's application to change his plan was untimely because PERS staff is *Page 20 
somehow responsible for decedent's failure to complete the plan properly on his first application.
 {¶ 55} "Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon that conduct." State ex rel. CitiesService v. Orteca (1980), 63 Ohio St.2d 295, 299. The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. Ohio State Bd. of Pharmacy v. Frantz
(1990), 51 Ohio St.3d 143. A prima facie case of equitable estoppel requires a showing that: (1) one party made factual misrepresentations; (2) that were misleading; (3) that induced actual reliance that was reasonable and in good faith; and (4) that caused detriment to the second party. Blue Cross/Blue Shield.
 {¶ 56} Relator argues that PERS failed to apprise decedent of the estimated monthly payments respective to each plan option that he might select. Specifically, the record indicates that decedent requested the documents necessary to elect a change from Plan B, a single life annuity, to either Plans A, C or D which provide for various joint survivorship annuities. The record indicates that those documents were mailed to him on December 29, 2006. Thereafter, it appears that decedent called PERS on January 19, 2007. At that time, the documents were explained to decedent. PERS received the application from relator on February 8, 2007. As indicated previously, relator had checked all the boxes instead of only one box as explained on the application itself. Relator points to the member history call list of PERS which indicates a call from decedent to PERS on February 21, 2007. The PERS employee to whom decedent spoke made the following notation in his record: "Member was not offered estimate by MSR so *Page 21 
completed all plans on SR-1PD. Will send mbr estimate and then he can complete new form I sent to him." Relator argues that decedent completed the application on February 25, 2007, mailed the application on March 1, 2007, and died the next day. Relator contends that but for the failure of PERS to properly notify decedent on the actual amounts of his pension which he would receive to pay on which plan he selected, his change of election would have been properly submitted to PERS on February 8, 2007, a month before he died. Because relator asserts that it is the fault of PERS that decedent's change of election was not timely received, relator contends that the principles of equitable estoppel apply and PERS should be required to accept decedent's change of election in spite of the fact that it was received after decedent died.
 {¶ 57} The magistrate notes that there are certain problems with relator's argument. First, the notation on the call record, standing alone, is not sufficient to show that PERS made misleading factual misrepresentations which induced decedent to improperly complete the application in the first instance. Second, the call records indicate that an employee of PERS went over the documents with decedent on January 19, 2007. Although PERS ultimately sent decedent estimates in writing, there is no evidence that approximations were not given to decedent during the January 19, 2007 phone call or that decedent did not request estimates. Third, decedent could have inquired about the estimates prior to the time he submitted the application to change his election wherein he had marked all the boxes. The record indicates that when decedent first began receiving his retirement pension, he was married and had elected Plan D, a joint survivorship annuity, which would pay a certain amount to decedent for as long as he lived and then the same amount to his beneficiary. After his divorce, decedent changed his election to *Page 22 
Plan B, a single life annuity, which would terminate at his death. After his remarriage, decedent submitted the application to change his election and checked the following three boxes:
 • Life with 50% to Surviving Spouse (Plan A): A joint survivorship annuity providing for payment to me as long as I live and thereafter 50 percent of such annuity to my spouse if he/she survives me, for as long as he/she lives. If you would like a percentage other than 50, see Life with Selected % to Survivor (Plan C) or Life with 100% to Survivor (Plan D) below.
 • Life with Selected % to Survivor (Plan C): A joint survivorship annuity providing for payment to me as long as I live and thereafter in a specified percentage to my spouse. I choose percent of such annuity to be paid to my spouse if he/she survives me, for as long as he/she lives. The percentage chosen must meet or exceed the greater of: 10 percent of the retiree's monthly benefit or a percentage that provides the beneficiary with a monthly benefit of at least $100.
 • Life with 100% to Survivor (Plan D): A joint survivorship annuity providing for payment to me as long as I live and thereafter in the same amount (100 percent) to my spouse if he/she survives me, for as long as he/she lives.
 {¶ 58} Although decedent was not given the actual amounts for what he would currently receive and for what his spouse would receive after his death, the instructions provide that the applicant is to choose only one plan at the time of his election. The explanations of the plans are sufficient to have notified decedent that relator would have received a significantly higher payment if he selected Plan D than if he selected any of the other plan options. Further, decedent had originally selected Plan D when he was married the first time. Thereafter, upon his divorce, he selected Plan B. Decedent was aware of the approximate difference in the monthly payment he would be receiving for his life under Plan D. *Page 23 
 {¶ 59} Because the magistrate does not find any evidence that PERS made misleading factual misrepresentations and because the record does not indicate that it would have been reasonable for decedent to not have understood, to a certain extent, his options, the magistrate finds that relator has not established a prima facie case supporting the application of equitable estoppel. As the court noted inSolomon, the rules which provide for when a change is put into effect "appear to prevent some death-bed reselections for retires who marry after receiving the higher single life annuity benefits for years. The preservation of state money is a legitimate state purpose that can supply a rationale for creating a classification." Id. at 67. In the present case, decedent was 60 years old while relator was 35 years old.
 {¶ 60} As such, the magistrate finds that relator has not demonstrated that PERS abused its discretion by determining that decedent's application to change his election was not in effect at the time he died and that his earlier election of Plan B was still in effect. Further, the statute is clear and unambiguous and there is no need for statutory interpretation. Lastly, the magistrate finds that relator has not demonstrated a prima facie case in support of the application of equitable estoppel.
 {¶ 61} Based on the foregoing, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus. *Page 1